Taft, J.,
 

 concurring in the judgment. This is an appeal from a decision of the Board of Tax Appeals refusing to grant an application for exemption of certain real property. The property involved is a parcel of land having a frontage of 92.5 feet on Euclid avenue in Cleveland and a depth of 684 feet. This land is improved with a three-story stone building which is being used as a dormitory for girl students.
 

 The applicant, appellant herein, is a corporation not for profit. It is affiliated with the Society of Friends or Friends’ Church and conducts an institution of learning apparently devoted primarily to educating, training, and equipping young men and women for Christian service. It is accredited with the State Department of Education to confer the degrees of Bachelor of Theology and Bachelor of Sacred Music. About
 
 *262
 
 21 per cent of its total income is represented by contributions and tbe remainder comes from tuition of' $37.50 per quarter and amounts collected for board and room. All students pay
 
 the
 
 stipulated tuition.. Each student in the dormitory building, located on the-property for which tax exemption is sought, is required to pay $42.75 per semester of 36 weeks for room-rent.- A cafeteria is operated where students and faculty get their meals. The highest paid member of the faculty receives an annual salary of $3,750. One-of the grounds of the claim for tax exemption is that the property is owned by “an institution used exclusively for charitable purposes,” within the meaning of Section 5353, General Code.
 

 The Board of Tax Appeals disallowed tax exemption on the ground that the college is not open to the public-generally, since a student who desires to enter the-senior college (the last two years of the four-year course of study) must be a Christian.
 

 I believe that the Board of Tax Appeals’ finding that a student who desires to enter the senior college must be a Christian is sustained by evidence in the-record and is not unreasonable. Therefore, the precise question to be considered is whether an institution-of learning is precluded from being an institution used “exclusively for charitable purposes” within the-meaning of Section 5353, General Code, and Section
 
 2r
 
 Article XII of the Constitution, just because it restricts admission to followers of somejlawful religion. In other words, must such an institution be open to the public generally if it is to be an institution used exclusively for charitable purposes?
 

 Section 2, Article XII of the Constitution, reads in part:
 

 “* * * general laws may be passed to exempt * * * institutions used exclusively for charitable purposes
 

 
 *263
 
 Section 5353, General Code, reads in part:
 

 “Real and tangible personal property belonging to institutions used exclusively for charitable purposes, shall be exempt from taxation.”
 

 In 10 American Jurisprudence, 631, Section 64, it is said:
 

 “Gifts,for the maintenance of universities, colleges, and academies, and other lawful educational institutions, are generally regarded as gifts for charitable uses, irrespective of the wealth or poverty of those who may be benefited therefrom; such gifts, if good in other respects, will be sustained by a court of equity. The fact that such an institution requires its students to pay tuition does not change its character as a charitable institution. The founding and support of private institutions of learning and the endowment of professorships and scholarships are also charities, as gifts for these purposes are designed to promote the public good by the encouragement of learning, science, and the useful arts. Such donations, although made without any particular reference to the poor, are regarded as charities. A gift to a private school, how-over, which is organized and managed for the pecuniary benefit of its owners is not a gift to charity. A gift to a school does not cease to be for charitable uses because religious instruction is combined in such school with that of a literary and scientific character. Hence, equity will uphold a donation for an educational purpose that is connected with a church.”
 

 Section 368 of the American Law Institute’s Restatement of the Law of Trusts reads:
 

 “ Charitable purposes include
 

 (a) the relief of poverty;
 

 (b) the advancement of education;
 

 (c) the advancement of religion;
 

 (d) the promotion of health;
 

 (e) governmental or municipal purposes;
 

 
 *264
 
 (f) other purposes the accomplishment of which is beneficial to the community.”
 

 Comment b. under that section reads:
 

 “The nature of charitable purposes.
 
 A purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity.
 

 “There is no fixed standard to determine what purposes are of such social interest to the community;the interests of the community vary with time and' place. At common law in England and in the United States it is agreed that the relief of poverty, the advancement of education and of religion, the promotion of health, the accomplishment of governmental or municipal purposes, are of such social interest to the community as to fall within the concept of charity. As to-what other purposes are of such interest to the community as to be charitable, no definite rule can be-laid down.”
 

 In
 
 Gerke, Treas.,
 
 v.
 
 Purcell,
 
 25 Ohio St., 229, the fourth paragraph of the syllabus reads:
 

 “A charity, in a legal sense, includes not only gifts for the benefit of the poor, but endowments for the-advancement of learning, or institutions for the encouragement of science and art, without any particular reference to the poor.”
 

 In the court’s opinion, on page 243, White, J.,
 
 saidz
 

 ‘‘ The maintenance of a school is a charity. ’ ’
 

 In
 
 Sowers
 
 v.
 
 Cyrenius,
 
 39 Ohio St., 29, 48 Am. Rep., 418, the first paragraph of the syllabus reads:
 

 “A residuary clause in a will in these words: ‘At the decease of my wife Esther I give and bequeath all my estate, real and personal, for the preaching of the gospel of the blessed Son of God, as taught by the-people known now as Disciples of Christ. The preaching to be well and faithfully done in Lorain county in Birmingham, and at Berlin in Erie county, Ohio, and'
 
 *265
 
 I nominate and appoint John Cyrenius, Silas Wood •and Samuel Steadman executors of this item of my last will and testament, and I request them to do the •business without remuneration,’ — creates a valid trust which will be enforced in a court of equity.”
 

 In the court’s opinion by Upson, J., on page 35, it is said:
 

 “Gifts for charitable purposes have always been favored, and trusts created for such purposes are carried into effect by courts of equity upon general principles of equity jurisdiction.
 

 “In the case of
 
 Urmey’s Executor
 
 v.
 
 Wooden and others
 
 (1 O. S. 160) it was decided that the courts of chancery in this state, independently of the statute of charitable uses, 43 Elizabeth, have jurisdiction to •enforce such trusts, and the existence of that jurisdiction has not since then been questioned.
 

 “Among the charitable trusts which have been most liberally construed and most uniformly sustained have been those created for the promotion of religion and education. It is clear from the language used by the testator in the third item of his will, that he intended his property to be used, after the death of his wife, for the promotion of religion by the preaching of the gospel of Christ as taught by the denomination known as the Disciples of Christ. The object thus stated is ■claimed to be vague, indefinite, and uncertain, but the authorities decisively show that this claim can not be sustained.
 

 “It is no objection to the validity of the trust that the individuals to be benefited by it are not designated in the will, for this indefiniteness is a necessary characteristic of charitable trusts. It is only required that ■discretionary power to use the property for the purposes intended by the testator should be given to trustees appointed by him, or by the court.”
 

 
 *266
 
 In
 
 Waddell, a Minor,
 
 v. Y.
 
 W. C. A.,
 
 133 Ohio St., 601, 604, 15 N. E. (2d), 140, Gorman, J., said:
 

 “Charity is not aid to the needy alone, but it embraces and includes all which aids man and seeks to-improve his condition. Diffusion of useful knowledge,, the acquirement of the knowledge of arts and sciences and the advancement of learning without any particular reference to the poor are considered charitable objects. See
 
 Gerke, Treas.,
 
 v.
 
 Purcell,
 
 25 Ohio St., 229;
 
 Cleveland Library Assn.
 
 v.
 
 Pelton, Treas.,
 
 26 Ohio St., 253.”
 

 ■ In
 
 Cullen
 
 v.
 
 Schmit,
 
 139 Ohio St., 194, 39 N. E. (2d), 146, the second paragraph of the syllabus reads:
 

 “A church is not engaged in a commercial enterprise and does not lose its character as a charitable-institution when, following and in connection with a religious service, it offers religious articles for sale- and uses any difference between the cost and sale price-thereof for religious purposes.”
 

 Many authorities to the same effect can be found.
 

 From the foregoing authorities it would appear thatthe appellant, an institution of learning, could be an institution used exclusively for charitable purposes, even-though it restricted admission to followers of some-lawful religion.
 

 There are statements in certain decisions of this-court which would apparently require a contrary conclusion.
 
 Bloch
 
 v.
 
 Board of Tax Appeals,
 
 144 Ohio St., 414, 59 N. E. (2d), 145;
 
 American Committee of Rabbinical College of Telshe, Inc.,
 
 v.
 
 Board of Tax Appeals,
 
 148 Ohio St., 654, 76 N. E. (2d), 719;
 
 Society of the Precious Blood
 
 v.
 
 Board of Tax Appeals,
 
 149 Ohio St., 62, 77 N. E. (2d), 459, and
 
 Mussio
 
 v.
 
 Glander, Tax Commr.,
 
 149 Ohio St., 423, 79 N. E. (2d), 233.
 

 However, in the
 
 Bloch, Society of the Precious Blood
 
 and the
 
 American Committee cases,
 
 tax exemption was-sought only under Section 5349, General Code. Im
 
 *267
 
 each of those cases reliance was placed upon one or more of the phrases in that section referring to
 
 “public
 
 colleges and academies,”
 
 “public
 
 institutions ■©f learning,” and “houses used exclusively for
 
 public
 
 -worship.” The attorney general, in his brief, injected into each case the applicability of Section 5353, Gen•eral Code, and contended that an institution must be open to the public generally in order to have tax ex- • emption as a charitable institution under the latter ■section. In none of the cases did the claimant challenge that contention. In some the claimant pointed ■out that no claim was being made under Section 5353, ■General Code, and in others that contention of the .attorney general was ignored. When the
 
 Mussio case
 
 was presented, the claimant recognized part of the ■syllabus in the
 
 Bloch case
 
 as establishing the require:ment that an institution be open to the public generally in order to be a charitable institution, and did not question that requirement. In none of the four cases did ■ anyone raise in this court the question as to whether the changes in Section 2 of Article XII of the Constitution in 1912 and in Section 5353, General Code, in 1923 called for a different decision as to the necessity •of that requirement than the one made in
 
 Gerke, Treas.,
 
 v.
 
 Purcell, supra.
 

 It clearly appears from a study of those four cases and the authorities cited in their opinions that the
 
 •Gerke case
 
 was the basis for the statements of this court in those cases, that an institution of learning is not an institution used exclusively for charitable purposes unless it is open to members of the public.
 

 The
 
 Gerke case
 
 was decided prior to the adoption of the 1912 amendment of Section 2, Article XII of the ■Constitution. Prior to that amendment, that section •of the Constitution did not provide for tax exemption •of “institutions used exclusively.for charitable purposes,” but instead, provided for such exemption of
 
 *268
 
 “institutions of purely public charity.” The latter-words appear in this section of the Constitution as. originally adopted in 1851 and as amended in 1905. Furthermore, until its amendment in 1923 (110 Ohio-Laws, 77),
 
 *
 
 Section 5353, General Code, and the statutes from which it was derived provided for “institutions of purely public charity” and not for “institutions used exclusively for charitable purposes.”
 

 The significance of the different constitutional and1 statutory provisions prior to 1912 and their effect on-the decision in the
 
 Gerke case
 
 were clearly brought out in that case, on page 243, by White, J., where he said,, after pointing out that an institution of learning was a charity:
 

 “But admitting the charitable nature of the use to-which the property is devoted, the next question is whether it comes within the description of ‘institutions, of purely public charity.’ ”
 

 The case of
 
 Myers, Treas.,
 
 v.
 
 Benjamin Rose Institute,
 
 92 Ohio St., 238, 110 N. E., 929, was decided under the provisions of Section 2, Article XII of the Constitution, after the amendment of 1912, but that amendment was not involved in the decision of the case. However, in the opinion by Johnson, J., he commented-upon the effect of the amendment, on page 250, as-follows:
 

 “As already observed, the constitutional provision under inquiry here was amended in September, 1912. For the phrase ‘institutions of purely public charity’' there is substituted the phrase ‘institutions used exclusively for charitable purposes.’ Widely different-, views are entertained concerning this amendment.
 

 “On the one hand, that as now used the word ‘institutions’ must be given a much more restricted meaning, and that the exemption must be confined to the-
 
 *269
 
 physical property or establishment which is used for the purposes stated.
 

 “On the other hand, the view in effect is that the purpose of the change was not to restrict but to enlarge the permissive power of the Legislature; that the framers of the amendment and the people will be presumed to have used the word ‘institution’ in view of the well-defined meaning that had been given to the term by the Legislature and by the adjudications •of this court, and that the intention was to grant to the Legislature the permissive power to extend exemptions to the property of associations which were not institutions of
 
 ‘purely piiblic’
 
 charity, but which nevertheless devoted themselves ‘exclusively to charitable purposes,’ such as the great fraternal organizations which provide and maintain homes in Ohio for their aged and infirm members, their widows and orphan children. Much of the charitable work of these organizations would have to be done by the state itself but for them.
 

 “This view is also supported by a consideration of the debates of the constitutional convention concerning this change. ’ ’
 

 In
 
 Jones, Treas.,
 
 v.
 
 Conn et al., Trustees,
 
 116 Ohio St., 1, 155 N. E., 791, it was said, on page 9, by Allen, J.:
 

 “In
 
 Myers, Treas.,
 
 v.
 
 Rose Institute,
 
 92 Ohio St., 238, 110 N. E., 929, the court adverted to the question presented herein, but decided that, under the record therein presented, the effect of the 1912 amendment of Section 2 of Article XII of the Ohio Constitution was-not involved. Prior to 1912 the Constitution exempted! property of institutions of purely public charity. In. 1912 the Constitution was amended, as above shown, to exempt institutions ‘used exclusively for charitable purposes.’ This amendment no doubt did, as defendants in error contend, enable the Legislature to ex
 
 *270
 
 empt from taxation the property of institutions
 
 of
 
 charity not purely public (speech of Mr. John Winn in offering the amendment, Volume 2, Ohio Constitutional Convention 1912, p. 1880), but it also emphasized the use of the property, and changed the emphasis from the ownership thereof to the manner of its use.”
 

 As hereinbefore mentioned, the line of cases beginning with the
 
 Bloch case
 
 indicate that an institution of learning must be open to members of the public in order to be considered as one used exclusively for charitable purposes. The statements to that effect in those cases were based upon the decision to that effect in the
 
 Gerlce case.
 
 That case was decided before the 1912 amendment of Section 2 of Article XII of the Constitution substituted the words, “institutions used exclusively for charitable purposes,” for the words, “institutions of purely public charity,” and before the similar changes made in Section 5353, General Code, in 1923. A consideration of the above quotation from Judge White’s opinion in the
 
 Gerlce case
 
 shows that the requirement that the institution of learning be open to members of the public was based entirely on the words, “purely public.”
 

 There do not appear to be any reasons of public policy in this state which would require an unreasonable or strained construction of the words, “charitable purposes,” in cases involving tax exemption for institutions of learning or religious institutions.
 

 Since 1851, Section 7 of Article I of the Constitution, ¡being a part of the so-called Bill-of Rights, has provided in part:
 

 “Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the General Assembly to pass suitable laws to protect every religious denomination in the peaceable en
 
 *271
 
 joyment of its own mode of public worship, and to encourage schools and the means of instruction.”
 

 Those provisions should dispel any doubt as to whether the people intended the words, “charitable purposes,” to include the purposes of an institution of learning such as conducted by appellant.
 

 The wisdom of extending tax exemption to institutions used exclusively for charitable purposes may well be questioned in view of the broad scope of the words “charitable purposes.” However, that is a question for the Legislature to decide. The people authorized the Legislature to give such tax exemption by the language which they used in the Constitution; and the Legislature then used language in Section 5353, General Code, which provided for such tax exemption. This court should not disregard a décision which the Constitution specifically authorized the General Assembly to make and which the General Assembly has made.
 

 My conclusions therefore are that:
 

 1. The words, “charitable purposes,” as used in Section 2 of Article XII of the Constitution and in Section 5353, General Code, include, among other things, the lawful advancement of both education and religion.
 

 2. If operated without any view to profit, an institution used exclusively for the lawful advancement of education or of religion or of both is an institution used exclusively for charitable purposes, within the meaning of Section 2 of Article XII of the Constitution and of Section 5353, General Code.
 

 3. By reason of the amendment of Section 2 of Article. XII of the Constitution in 1912 and the subsequent change made in Section 5353, General Code, in-1923, it is no longer necessary that such an institution be open generally to the public in order to have tax exemption of property owned and used by it exclusively for lawful educational or religious purposes.
 

 
 *272
 
 4. The fact, that such institution restricts admission to followers of the Christian or any other lawful religion, will not prevent it from having tax exemption of its property used exclusively for lawful educational or religious purposes.
 

 5. The decision of the Board of Tax Appeals, being unreasonable and unlawful, should be reversed.
 

 *
 

 In the amendment of Section 5353, General Code, in 1913 (103 Ohio Laws, 548), the word, purely, was omitted.