Allen, J.
 

 It is conceded that under the will the trustees were directed to proceed, as soon as practicable, “to erect the necessary buildings for a home and also for a school,” which institution was to be open to certain children from the northern • counties of the state of Ohio, up to the age of 21 years. It is conceded that the property was turned over by the executors to the trustees in February, 1922, and that the trustees between that date and January 1, 1924, selected a superin
 
 *5
 
 tendent for the home and school, and proceeded with the erection of certain buildings. It was the plan of the trustees that the home and school should be conducted upon the so-called “cottage plan,” and by January 1, 1924, one cottage was available for the accommodation of children as a home. In August, 1923, the auditor of Van Wert county, acting under Section 5399, General Code, placed on his duplicate, as omitted property, real estate, moneys, credits, investments, and other personal property described in the petition as having been omitted for taxation purposes by the defendants in error for the years 1922 and 1923. The personal property so placed on the duplicate was as follows: Moneys, $100,000; credits, $516,580 ; investments $1,724,600; other personal property, $7,390. The real estate alleged to have been omitted was valued at $240,060, the taxes and penalties against which for two years aggregated $9,255.43. The total valuation of the real and personal property so added was $2,588,630, and the taxes and penalties thereon assessed $103,-765.87.
 

 The property, which comprised the estate of George H. Marsh, deceased, under the will of the testator was set aside for the foundation and support of a school and home for orphan or other children from Van Wert county or other counties of northwestern Ohio.
 

 There is no contention as to the fact that the will provides for a purely public charity. There is no contention as to the fact that the trustees proceeded with the utmost and with most commendable diligence to organize the trust for the public
 
 *6
 
 charity, to conserve its property, to safeguard and increase its income, and to prosecute the work preliminary to the dispensation of the charity. The conflict arises over the question whether the personal property belonging to the trust estate is taxable for the years 1922 and 1923, after the trustees took over the estate and during the period before any charity was being dispensed.
 

 The constitutional and statutory provisions involved are the folloAving: “Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property according to its true value in money, * * * but burying grounds, public schoolhouses, houses used exclusively for public worship, institutions used exclusively for charitable purposes * * * may, by general Iuavs, be exempted from taxation * * Article XII, Section 2, Constitution of Ohio.
 

 Section 5353, General Code, as amended in 1913 (103 Ohio Laws, 548): “Lands, houses and other buildings belonging to a county, township, city or village, used exclusively for the accommodation or support of the poor, or leased to the state or any political subdivision thereof for public purposes, and property belonging to institutions of public charity only, shall be exempt from taxation.”
 

 Section 5353-1, General Code: “Property, real, personal, and mixed, the net income of which is used solely for the support of institutions used exclusively for children’s homes for poor children, the real estate on AAdiieh said institutions are
 
 *7
 
 located, and the buildings connected therewith, shall be exempt from taxation.”
 

 The real estate is not in question here, as counsel fox the defendants in error concede that under the ruling in
 
 Benjamin Rose Institute
 
 v. Myers,
 
 Treas.,
 
 92 Ohio St., 252, 110 N. E., 924, L. R. A., 1916D, 1170, the real estate cannot be exempt. It is the undisputed testimony that until after the second Monday in April, 1923, the day provided by Section 5372-1, General Code, for the listing of personal property in the possession or control of a trustee, there was no attempt to use any part of the real estate for the purposes of the institution, and until on and after that date all of the real estate comprised in the trust, except the vacant lots, was leased with a view to profit.
 

 The question therefore relates to the personal property only, with regard to which the record is as follows:
 

 I. C. Morgan, one of the executors and trustees, testified that the income from all of the property controlled by the trustees went into an earnings account, and was spent in the construction of the buildings, the erection of which was started in July, 1923. Mr. Morgan’s testimony upon that point is as follows:
 

 “Q. Nowt, that income, prior to the time you began your construction work, went into the main fund, as an accumulation to it? A. No, no. It went into an earning account, or profit and loss account. When we took over that property, a little over $4,000,000, par value, from that date on, all of the earnings went into — at the close of the year, went into a profit and loss, or earnings ac
 
 *8
 
 count, whatever you may term it. Q. What do you do with the money that comes in? A. Been spending it for the building of these buildings. Q. Wasn’t there any income there that accumulated prior to the time you began the construction of the buildings? A. We have spent more than all the accumulations; we are spending part of the principal. Q. Well, you have accumulated money from the earnings which you did spend when you began to construct the building? A. Yes, sir. Q. Now you are spending some of the principal? A. Yes, sir. ” •
 

 Under the case of Myers,
 
 Treas.,
 
 v.
 
 Rose Insti
 
 tute, 92 Ohio St., 238, 110 N. E., 929, personal property belonging to charitable institutions, the income of which is used to sustain the institution, is exempt from taxation in this state. That case, however, arose under the former wording of Section 2, Article XII of the Ohio Constitution, and hence is not controlling upon the question presented here. Under the Constitution in its present form, with Section 2, Article XII, as amended, such income to be exempt must be used exclusively for charitable purposes. The plaintiffs in error contend that no institution was in being in this case for the years 1922 and 1923, and that the income of the personalty could not thereby be used to “sustain the institution.” The defendants in error, on the other hand, contend that the moment the trust was organized by turning over the estate from the executors to the trustees under the will the institution was in being for the purposes of the trust. Upon this point we agree with the defendants in error. It is generally held that the
 
 *9
 
 organization of a trust to execute a charitable purpose constitutes a charitable institution, and this is the rule in Ohio as well as in other states.
 
 Gerke
 
 v.
 
 Purcell,
 
 25 Ohio St., 229;
 
 Humphries, Aud., v. Little Sisters of the Poor,
 
 29 Ohio St., 201;
 
 Cleveland Library Assn.
 
 v.
 
 Pelton, Treas.,
 
 36 Ohio St., 253;
 
 Davis, Aud.,
 
 v.
 
 Cincinnati Camp Meeting Ass’n.,
 
 57 Ohio St., 257, 49
 
 N.
 
 E., 401;
 
 Little, Treas.,
 
 v.
 
 United Presbyterian Theological Seminary,
 
 72 Ohio St., 417, 74 N. E., 193.
 

 The plaintiffs in error next contend that under the record presented the personal property in question was not used exclusively for charitable purposes during the period of 1922 and 1923. The defendants in error, on the contrary, urge that the erection of buildings and preparation of grounds to carry forward the charity is a present and exclusive use of the property for the purposes of the charity. In this connection the defendants in error point to Section 5353, General Code, and claim that the personal property is exempt as “belonging to an institution of public charity only.” They also point to Section 5353-1, and claim that the personal property is exempt, urging that its net income was “used solely for the support” of the institution, and “used exclusively for a children’s home for poor children.”
 

 In
 
 Myers, Treas.,
 
 v.
 
 Rose Institute,
 
 92 Ohio St., 238, 110 N. E., 929, the court adverted to the question presented herein, but decided that, under the record therein presented, the effect of the 1912 amendment of Section 2 of Article XII of the Ohio Constitution was not involved. Prior to 1912 the Constitution exempted property of institutions of
 
 *10
 
 purely public charity. In 1912 the Constitution was amended, as above shown, to exempt institutions “used exclusively for charitable purposes.” This amendment no doubt did, as defendants in error contend, enable the Legislature to exempt from taxation the property of institutions of charity not purely public (speech of Mr. John Winn in offering the amendment, Volume 2, Ohio Constitutional Convention 1912, p. 1880), but it also emphasized the use of the property, and changed the emphasis from the ownership thereof to the manner of its use. Furthermore, when the amendment employed the word “exclusively,” it placed as narrow construction upon the meaning of the clause as was possible; for, as pointed out in Zollman on Charities, p. 473, “Property or buildings might actually .be used for charitable purposes and yet not be used exclusively. ’ ’ The amendment of 1918 which added a provision as to taxation of real estate and the mortgage or debt secured thereby in no way altered or affected the phrase of the Constitution here involved. Hence it is the use of the property and not the ownership which decides the question, and the exemption must depend upon its actual and exclusive devotion to the work of the institution.
 
 Cooper Hospital
 
 v.
 
 Camden,
 
 68 N. J. Law, 691, 54 A., 419. Under such a constitutional provision as ours, adopted in 1912, there is no question as to the taxability of real estate leased for profit, regardless of the use to which the income therefrom is put. This fact is recognized by Nichols, C. J., in
 
 Benjamin Rose Institute
 
 v.
 
 Myers,
 
 92 Ohio St., 252, 271, 110 N. E., 924, 929 (L. R. A., 1916D, 1170),
 
 supra,
 
 where he says:
 

 
 *11
 
 “It could not be contended for one moment that the property in question by any possible constitutional legislation could be exempt under the language of amended Section 2 of Article XII.”
 

 Real estate leased for profit is held in a long line of authorities, including the
 
 Rose Institute case, supra,
 
 not to be “exclusively used for charitable purposes;” the view being that property which is not used directly for the purpose and in the operation of the charity, but is employed for profit, is not used exclusively for the purposes of the charity, and hence is not exempt. The fact that the entire profits are devoted to the charity’s support will not alter this result. Zollman on Charities, Sections 719-724.
 

 "When it comes to an endowment fund, some courts hold that the fund is exempt from taxation, even though it is commercially invested; the theory being that the only usefulness of an endowment fund is to produce an income with which to sustain the charity. Other courts deny the exemption of endowment funds because they are not exclusively used for charitable purposes; the theory being that securities and personal property that are invested are being put to a commercial and not to a charitable use.
 
 National Council of Knights and Ladies of Security
 
 v.
 
 Phillips,
 
 63 Kan., 808, 66 P., 1014;
 
 State ex rel. Bd. of Adm’rs. of Tulane Education Fund
 
 v.
 
 Board of Assessors,
 
 35 La. Ann., 668.
 

 We have seen no case cited, in favor of the exemption, exactly like the case presented here, where the claim of exemption is made before a single child was offered the charity in question, and where the constitutional provision which covers
 
 *12
 
 the case requires that the property exempt be used exclusively, as well as actually, for charitable purposes. Obviously the statutes above quoted (Sections 5353 and 5353-1) must be construed in light of the constitutional provision, and property belonging to institutions of public charity only, which is not used exclusively for the charitable purpose, cannot bo exempt from taxation under the above statutes; for so construed and applied the statutes would be at variance with the express provision of the Constitution. This was the specific holding in
 
 Wilson, Aud.,
 
 v.
 
 Licking Aerie,
 
 104 Ohio St., 137, 135 N. E., 545, which holds in the syllabus:
 

 “2. The provision in Section 2, Article XII, of the Constitution, that institutions ‘used exclusively for charitable purposes * * * may, by general laws, be exempted from taxation,’ does not authorize the General Assembly to exempt from taxation the property of benevolent organizations not used exclusively for charitable purposes.
 

 “3. Section 5328, General Code, passed pursuant to the requirement of Section 2, Article XII,. of the Constitution, requires that ‘all real or personal property in this state * * * shall be subject to taxation, except only such property as may be expressly exempted therefrom.’ The exemption must be clearly and expressly stated in the statute and must be such only as the above section of the Constitution authorizes to be exempted.”
 

 The same principle has been recently affirmed and emphasized in
 
 State ex rel. Boss
 
 v.
 
 Hess, Aud.,
 
 113 Ohio St., 52, 148 N. E., 347.
 

 The controversy raises fine distinctions with much of merit to be said upon both sides of
 
 *13
 
 the proposition. Surely the erection of buildings through which the trust is to be dispensed is a necessary and incidental part of carrying out the charity, and the point is close. However, the weight of authority holds that that property only can be exempt from taxation which is used actually in the dispensing of the charity, and here there has been no actual dispensation of the charity during the years in question.
 
 American Sunday School Union
 
 v.
 
 City of Philadelphia,
 
 161 Pa., 307, 29 A., 26, 23 L. R. A., 695;
 
 Trustees of Academy of Richmond County
 
 v.
 
 Bohler, Tax Collector,
 
 80 Ga., 159, 7 S. E., 633. In the
 
 Bohler case
 
 it is declared that it is the use of the property which renders it exempt or not exempt, not the use of the income derived from it. 12 Am.
 
 &
 
 Eng. Enc. of Law, 323; 37 Cyc., 908;
 
 Boston Society of Redemptorist Fathers
 
 v.
 
 City of Boston,
 
 129 Mass., 178;
 
 Washburn College
 
 v.
 
 Comm’rs. of Shawnee County,
 
 8 Kan., 344.
 

 We quote Caldwell, J., in
 
 Cincinnati College
 
 v.
 
 State,
 
 19 Ohio, 110: “But when any society, no' matter of what kind, whether scientific, literary, or religious, enters the common business of life, and uses property for the purpose of accumulating-money, the government should, and we think the statute does, treat it in the same way persons-are dealt with, who are using property in a similar manner, and engaged in the same business.”
 

 In this state we feel that the question has been foreclosed by the case of
 
 Benjamin Rose Institute
 
 v.
 
 Myers, Treas.,
 
 92 Ohio St., 252, 110 N. E., 924, L. R. A., 1916D, 1170, which held that the real estate belonging to an institution of purely public-
 
 *14
 
 charity is exempt from taxation only when used exclusively for charitable purposes, and, if such real estate is rented for commercial and residence purposes, it is not exempt even although the income arising from such use is devoted wholly to the purpose of the charity. This case has been followed and applied to personal property in the recent case of
 
 State ex rel. Boss
 
 v.
 
 Hess, Aud., supra.
 

 The recoi’d herein shows that the income was accumulated into an earnings fund; that is, the investment was for commercial purposes, and for the accretion of the fund. During the years in question, before the charity was actually dispensed, the investment was not employed for exclusively charitable purposes. It was used for very worthy financial purposes, commercial purposes, prudently carried out on behalf of the trust. Under the amended section of the Constitution and the holding in the
 
 Hess case, supra,
 
 the fact that the income was later used exclusively for charitable purposes does not exempt it for the years in question. In other words, to quote the excellent phrase of the learned trial court, “the law is against the exemption of the property until the ownership and use coincide;” and, though the ownership was in the trustees from the time they took the property over from the executors, the use did not begin until January, 1924.
 

 We see absolutely no distinction, from the standpoint of principle, between real estate and personal property for the purpose of this decision. We have in this case a large amount of personal property which is invested for commercial pur
 
 *15
 
 poses. It consists of securities of various kinds and the ordinary stock investments yielding income. The income arising from this use during the years in question, and before the charity was actually dispensed, was not and could not be devoted exclusively to the charitable purposes of the trust, but since that time it has been devoted wholly to the purpose of the charity, which is most worthy. Every reason which applies in favor of the nonexemption from taxation of real estate under the circumstances of the
 
 Bose Institute case, supra,
 
 applies in favor of the nonexemption of personal property. Under the
 
 Bose Institute case, supra,
 
 and the
 
 Hess case, supra,
 
 the contention of plaintiffs in error must be sustained and judgment rendered for plaintiffs in error.
 

 It is therefore ordered and adjudged by this Court that the injunction granted by the said Court of Appeals be and the same hereby is dissolved and that the plaintiffs in error herein be and they hereby are directed to proceed with the collection of the taxes levied on said property for the years 1922 and 1923.
 

 Judgment of the Court of Appeals reversed and judgment for plaintiffs in error.
 

 Marshall, C. J., Robinson, Jones and Matthias, JJ., concur.
 

 Day and Ktnkade, JJ., dissent.