IN RE THREE APPLICATIONS FOR THE EXEMPTION OF REAL PROPERTY FROM TAXATION AND FOR THE REMISSION OF TAXES: DENISON UNIVERSITY, APPELLANT, *v.* BOARD OF TAX APPEALS ET AL., APPELLEES.

18

(No. 38994—Decided March 31, 1965.)

*Messrs. Morrow & Gordon* and *Mr. E. Clark Morrow,* for appellant.

*Mr. William B. Saxbe,* attorney general, *Mr. Daronne R. Tate, Mr. Tom Moyer* and *Miss Virginia Weiss,* for appellees.

TAFT, C. J. Denison bases its claim for tax exemption upon Sections 5709.07 and 5709.12, Revised Code.

Section 5709.07, Revised Code, reads so far as pertinent:

"*Public schoolhouses* and houses used exclusively for pub-

lic worship, the books and furniture therein, and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof, and not leased or otherwise used with a view to profit, *public colleges and academies and all buildings connected therewith, and all lands connected with public institutions of learning, not used with a view to profit, shall be exempt from taxation.*'' (Emphasis added.)

Substantially identical statutory language has been in force in this state since at least 1859 (56 Ohio Laws 175, 177). See *Gerke, Treas.,* v. *Purcell* (1874), 25 Ohio St. 229, 240, 246.

The attorney general contends that this statutory language is not applicable in the instant case because Denison University is not a public college or public institution of learning within the meaning of the statute.

Denison is a private institution of learning conducted in a lawful manner without any view to profit and open to all members of the public without regard to race, creed or nationality.

This court has always held that such an institution is a public college and a public institution of learning within the meaning of Section 5709.07. *Gerke, Treas.,* v. *Purcell, supra* (25 Ohio St. 229); *College Preparatory School for Girls* v. *Evatt, Tax Commr.* (1945), 144 Ohio St. 408, 59 N. E. 2d 142; *Cleveland Bible College* v. *Board of Tax Appeals* (1949), 151 Ohio St. 258, 85 N. E. 2d 284. See *Little, Treas.,* v. *United Presbyterian Theological Seminary* (1905), 72 Ohio St. 417, 74 N. E. 193. Unlike the institution involved in *American Committee of Rabbinical College of Telshe, Inc.,* v. *Board of Tax Appeals* (1947), 148 Ohio St. 654, 76 N. E. 2d 719, relied upon by the attoney general, Denison does provide educational opportunities to the public generally.

Paragraph eight of the syllabus in *Gerke, Treas.,* v. *Purcell, supra* (25 Ohio St. 229), reads:

''In the description of the property exempted from taxation in * * * [what is now Section 5709.07, Revised Code] the word public, as therein applied to school-houses, colleges, academies, and other institutions of learning, is descriptive of the uses to which the property is devoted. The schools and instruction which the property is used to support must be for the bene-

fit of the public; and when private property is thus appropriated without any view to profit, it constitutes a 'purely public charity' within the meaning of the constitutional provision."

In the opinion by White, J., at page 247, it is stated: "* * * The statute must be construed in the light of the state of things upon which it was intended to operate. At the time of its passage there were few, if any (and we know of none), colleges or academies in the state owned by the public, while there were many such institutions * * * owned by private, corporate, or other organizations, and founded, mostly, by private donations."

Every other question involved in the instant case was considered and decided by this court in 1909 when it affirmed without opinion (81 Ohio St. 514, 91 N. E. 1138) the decision of the Circuit Court of Knox County in *Kenyon College* v. *Schnebly, Treas.* (1909), 12 C. C. (N. S.) 1, which held that, by reason of what is now Section 5709.07, Revised Code, "residences occupied by the president and professors and janitor are exempt [from taxation], as is also vacant land from which no revenue is derived * * *."

We agree with the statements of the Circuit Court in that case that "the plain language of the statute is 'all public colleges, public academies, all buildings connected with the same, are exempt' and we think it was the purpose to exempt all buildings that were with *reasonable certainty* used in furthering or carrying out the necessary objects and purposes of the college," and that "the statute is clear, that all lands connected with public institutions of learning, '*not used with a view to profit*' are exempt."

In disposing of the argument "that the residences [of professors] fall within the same class as the parish houses or parochial residences of the priests and bishops" held not exempt in *Watterson* v. *Halliday, Aud.* (1907), 77 Ohio St. 150, 82 N. E. 962, the opinion states: "* * * the Legislature have used entirely different language with respect to * * * houses and residences * * * of any * * * church than that which is employed in respect to buildings connected with public colleges and public academies [*i. e.*, "and all

buildings connected therewith"]. The language of the statute which was under consideration in [the *Halliday*] case is 'all public school houses and houses used *exclusively* for public worship.' "

As to the buildings involved in the instant case, it is apparent that all are connected with Denison University, a public college. Furthermore, they are "with reasonable certainty used in furthering or carrying out the necessary objects and purposes of" the college. They are, therefore, specifically exempted from taxation by Section 5709.07, Revised Code. The land not occupied by buildings and connected with Denison University, a public institution of learning, is also exempted from taxation by that statute if "not used with a view to profit."

It is contended, however, that subsequent cases require contrary conclusions. Thus, *Western Reserve Academy* v. *Board of Tax Appeals* (1950), 153 Ohio St. 133, 91 N. E. 2d 497, is referred to as holding that buildings connected with a public academy could not be exempt from taxation under Section 5709.07, Revised Code, because occupied by instructors and their families as residences.

In reaching its conclusion, the majority in the *Western Reserve Academy case* first adopted as "the rule" the statement in paragraph two of the syllabus in *Ursuline Academy of Cleveland* v. *Board of Tax Appeals* (1943), 141 Ohio St. 563, 49 N. E. 2d 674, that "under [what are now Sections 5709.07 and 5907.12, Revised Code] * * * property * * * may be exempted from taxation only if used exclusively for a charitable purpose at the time the exemption is sought." The court then held that there could' be no such exclusive use if the buildings, for which exemption was sought, were used as residences by instructors and their families.

Thus, without "the rule" requiring *exclusive use for a charitable purpose* imported from paragraph two of the syllabus of the *Ursuline Academy case* and added as a requirement for exemption to the words of Section 5709.07, Revised Code, there is no apparent reason for the decision in the *Western Reserve Academy case* being different from that previously rendered in the *Kenyon College case*.

Before considering whether "the rule" adopted from paragraph two of the syllabus in the *Ursuline Academy case* is correct, it may be observed that it represented a *dictum* in that case so far as it referred to what is now Section 5709.07, Revised Code. Thus, it appears from the report of the case (141 Ohio St. 563, 564) that the property, for which exemption was there sought, was owned by the academy but not yet used by it and had "no physical connection with any other property of" the academy, being far removed therefrom. Thus, it probably could not reasonably be described by any words of Section 5709.07, Revised Code, so that, on the facts, that statutory section was not involved in the case.

In order to understand the reasons stated by the court for paragraph two of the syllabus in *Ursuline Academy of Cleveland* v. *Board of Tax Appeals, supra* (141 Ohio St. 563), and in order to determine whether either that case or the *Western Reserve Academy case, supra* (153 Ohio St. 133), should prevent the tax exemption sought in the instant case, it is first necessary to consider what power the General Assembly had to provide exemptions from taxation when it first enacted what is now Section 5709.07, Revised Code, and what subsequent changes were made in that power.

As stated by Ranney, C. J., in *City of Zanesville* v. *Richards, Aud.* (1855), 5 Ohio St. 589, 592: "Before the adoption of the present Constitution [of 1851] the whole matter of taxation was committed to the discretion of the General Assembly." In other words, the right to levy taxes and provide exemptions therefrom was included within the grant of legislative power to the General Assembly. This power to tax and provide exemptions therefrom was limited by the following words of Section 2 of Article XII of the Constitution of 1851:

"Laws shall be passed, taxing, by a uniform rule, *all* moneys, credits, investments * * *, and also *all* real and personal property, according to its true value in money; but burying grounds, public schoolhouses, houses used exclusively for public worship, *institutions of purely public charity,* public property used exclusively for any public purpose * * * may, by general laws, be exempted from taxation * * *." (Emphasis added.)

Because this section provided only for laws taxing "all" property and provided only for certain specified exemptions from taxation, it was held that the General Assembly had no power to provide for other tax exemptions. *Exchange Bank of Columbus* v. *Hines, Treas.*, 3 Ohio St. 1.

In *Gerke, Treas.*, v. *Purcell, supra* (25 Ohio St. 229), one of the questions considered was the effect of Section 2 of Article XII as then in force on the validity of what is now Section 5709.07, Revised Code. The court held that, so far as academies, colleges and other institutions of learning were concerned, they could receive exemption under what is now Section 5709.07, Revised Code, only because that constitutional provision provided that "institutions of purely public charity * * * may be exempted." Hence, the statutory words "public colleges * * * academies * * * and * * * public institutions of learning" were interpreted as including only "institutions of purely public charity."

In 1912, the words "of purely public charity," as used in the Constitution, were replaced by the words "used exclusively for charitable purposes."

Effective in 1931, this section of the Constitution was amended to read so far as material to a consideration of this case:

"No property, taxed according to value, shall be so taxed in excess of one and one-half [later reduced, effective in 1934, to one] per cent of its true value in money * * * [with specified exceptions where voter or municipal charter approval]. Land and improvements thereon shall be taxed by uniform rule according to value. [Certain specified public] bonds * * * shall be exempt from taxation, and *without limiting the general power,* subject to the provisions of Article I of this Constitution, *to determine the subjects and methods of taxation or exemptions therefrom,* general laws may be passed to exempt burying grounds, public schoolhouses, houses used exclusively for public worship, institutions used exclusively for charitable purposes, and public property used exclusively for any public purpose * * *." (Emphasis added.)

The only reasons stated in the opinion in *Ursuline Academy*

*of Cleveland* v. *Board of Tax Appeals, supra* (141 Ohio St. 563), for adding, in effect, exclusive use for charitable purposes as a requirement for exemption under what is now Section 5709.07, Revised Code, are stated as follows in the opinion by Turner, J., at page 568:

"'* * * use [*i. e.*, exclusively for charitable purposes] must be read into any statute enacted prior to the amendment of Section 2 of Article XII, effective * * * 1931. * * *

"'* * * *

"'* * * In * * **Jones, Treas.*, v. *Conn et al., Trustees*, 116 Ohio St. 1, 10, 155 N. E. 791, Judge Allen pointed out that the 1912 amendment changed the emphasis from ownership of property to the manner of its use [*i. e.*, exclusively for charitable purposes]."

The foregoing reasons are inconsistent with paragraph five of the syllabus of the *Ursuline Academy case* which reads:

"The adoption of an amendment to the Constitution cannot be helpful in the interpretation of the meaning of legislation enacted prior to such amendment."

It might be added that this would be especially so with respect to well-settled judicial interpretations of that meaning which had been made before such amendment, such as the interpretations of what is now Section 5709.07, Revised Code, made by this court when it affirmed, without opinion, *Kenyon College* v. *Schnebly, Treas., supra* (12 C. C. [N. S.] 1).

Judge Turner's reasons also are inconsistent with paragraph three of the syllabus of the *Ursuline Academy case* which reads:

"The amendment of Section 2 of Article XII of the Constitution of Ohio, effective * * * 1931, did not change * * * the meaning of * * * [what is now Section 5709.07, Revised Code] * * * enacted prior to such amendment."

How then could the amendment effective in 1912 have done so?

Actually, the majority of four in the *Ursuline Academy case* was apparently endeavoring, under the guise of statutory interpretation, to hold that, sometime between 1912 and 1931 and at least 12 years before their opinion was rendered, what is

now Section 5709.07, Revised Code, became unconstitutional and void so far as it authorized tax exemption for property of public colleges, academies or other institutions of learning, where such property was not "used exclusively for charitable purposes."

However, no court has ever, within the limitations imposed by Section 2 of Article IV of the Ohio Constitution,* declared unconstitutional any of that portion of what is now Section 5709.07, Revised Code, which is involved in the instant case. Cf. *State, ex rel. Boss,* v. *Hess, Auditor* (1925), 113 Ohio St. 52, declaring another separable portion of this statute unconstitutional because of conflict with Section 2 of Article XII.

Paragraph four of the syllabus and the opinion in the *Ursuline Academy case* recognized, at least by implication, as indicated in the italicized words quoted above from the amendment of Section 2 of Article XII effective in 1931, that the General Assembly now has a power to determine exemptions from taxation, which is limited only by the provisions of Article I of the Ohio Constitution. If that conclusion is correct, then, since the portions of what is now Section 5709.07, Revised Code, that are involved in the instant case, have never been determined to be unconstitutional, there is no basis for any contention that those portions of the statute cannot now be interpreted as they were before 1912 in *Kenyon College* v. *Schnebly, supra* (12 C. C. [N. S.] 1).

However, paragraph two of the syllabus in *City of Cleveland* v. *Board of Tax Appeals* (1950), 153 Ohio St. 97, 91 N. E. 2d 480, reads:

"Section 2, Article XII of the state Constitution, providing that 'without limiting the general power, subject to the provisions of Aricle I of the Constitution, to determine the subjects and methods of taxation or exemptions therefrom, general laws may be passed to exempt * * * public property used exclusively for any public purpose' is a limitation upon the legislative power to enact laws exempting property, and the General As-

---

*The pertinent provisions are: "No law shall be held unconstitutional and void by the Supreme Court without the concurrence of at least all but one of the judges, except in the affirmance of a judgment of the Court of Appeals declaring a law unconstitutional and void."

sembly may not exempt from taxation publicly owned property not used exclusively for any public purpose. * * *''

Such a statement ignores the words ''without limiting the general power * * * to determine * * * exemptions therefrom * * *.'' ''Exemptions therefrom'' must mean exemptions from taxation. No other meaning can reasonably be given to ''exemptions therefrom.'' See *State, ex rel Struble,* v. *Davis et al., Tax Comm.* (1937), 132 Ohio St. 555, 9 N. E. 2d 684, holding that the General Assembly now has general power to determine exemptions from taxation of personal property subject only to Article I of the Ohio Constitution.

It is significant that the word ''all'' does not now appear before the words ''land and improvements thereon.'' The presence of the word ''all'' before ''property'' in the 1851 version of this constitutional provision was always given by this court as the reason why the General Assembly had no power to provide for any exemptions from taxation not specifically authorized by Section 2 of Article XII. *Exchange Bank of Columbus* v. *Hines, Treas., supra* (3 Ohio St. 1); *City of Zanesville* v. *Richards, Aud., supra* (5 Ohio St. 589); *Baker* v. *City of Cincinnati* (1860), 11 Ohio St. 534, 540; *Fields* v. *Commissioners of Highland County* (1881), 36 Ohio St. 476, 481; *Shotwell* v. *Moore* (1888), 45 Ohio St. 632, 645, 16 N. E. 470; *Lee, Treasurer,* v. *Sturges* (1889), 46 Ohio St. 153, 159, 19 N. E. 560, 2 L. R. A. 556; *Carlisle* v. *Hetherington* (1890), 47 Ohio St. 235, 249, 24 N. E. 488; *Treasurer* v. *Bank* (1890), 47 Ohio St. 503, 518, 25 N. E. 697, 10 L. R. A. 196; *Ashley* v. *Ryan* (1892), 49 Ohio St. 504, 524, 31 N. E. 721; *Probasco, Exr.,* v. *Raine, Aud.* (1893), 50 Ohio St. 378, 391, 34 N. E. 536; *State, ex rel.,* v. *Ferris* (1895), 53 Ohio St. 314, 332, 41 N. E. 579, 30 L. R. A. 218. The removal of the specific requirement that ''all'' real or personal property be taxed fortifies our conclusion that the people intended, as they stated, to return to the General Assembly as part of its legislative power ''the general power * * * to determine * * * exemptions'' from taxation subject only to the limitations set forth in Article I of the Ohio Constitution, the so-called Bill of Rights. There is no suggestion that the claimed exemptions in the instant case would raise any question under that Article I.

The subsequent decision of *Carney, Aud.,* v. *Ohio Turnpike*

*Commission* (1958), 167 Ohio St. 273, 147 N. E. 2d 857, also casts considerable doubt upon the soundness of paragraph two of the syllabus of *City of Cleveland* v. *Board of Tax Appeals, supra* (153 Ohio St. 97).

For the foregoing reasons, we believe that the decision in *Western Reserve Academy* v. *Board of Tax Appeals, supra* (153 Ohio St. 133), must be overruled to the extent that it conflicts with our decision (81 Ohio St. 514) affirming *Kenyon College* v. *Schnebly, Treas., supra* (12 C. C. [N. S.] 1); paragraph two of the syllabus of *Ursuline Academy of Cleveland* v. *Board of Tax Appeals, supra* (141 Ohio St. 563), must be distinguished as *dicta* and disapproved; and paragraph two of the syllabus of *City of Cleveland* v. *Board of Tax Appeals, supra* 153 Ohio St. 97), must be overruled.

So far as the buildings and the 127-acre farm are concerned, the evidence in the record as to their use, Section 5709.07, Revised Code, and our decision in affirming *Kenyon College* v. *Schnebly, supra* (12 C. C. [N. S.] 1), require their exemption from taxation.

There is evidence that possibly as much as 20 acres of the farm had been rented and that some farmer had harvested crops of soy beans and alfalfa therefrom. There is no evidence to indicate what, if any, payment Denison received or whether it merely allowed the use of the land to keep it in reasonably good condition. No effort was made by those opposing tax exemption, by cross-examination of Denison's witnesses or otherwise, to show that, to use the words of Section 5709.07, Revised Code, any portion of these 127 acres was "used with a view to profit." On such a record, we believe it is unreasonable to find that the whole 127 acres should not be exempted from taxation under Section 5709.07, Revised Code.

The donation of private property for the support of education for the benefit of the public without any view to profit should always be encouraged. It relieves taxpayers of part of the burden they would otherwise have of providing such education. It would be unreasonable to tax facilities for public education that tax dollars have provided. It would be almost as unreasonable to tax facilities for such education where private

donations have provided those facilities and thereby relieved tax dollars from providing them. Our General Assembly has recognized this by enactment of Section 5709.07, Revised Code. Our Constitution no longer inhibits such legislation. This court should not, by narrow and strict construction of statutes such as Section 5709.07, Revised Code, discourage private donations for public education.

Although the opinion in *Denison University* v. *Board of Tax Appeals* (1962), 173 Ohio St. 429, 183 N. E. 2d 773, a case which dealt with a claim for tax exemption of college fraternity houses, contains some statements that are inconsistent with our conclusions in the instant case or our reasons for those conclusions, neither the syllabus nor the judgment in that case is inconsistent with those conclusions or reasons. Although the opinion does refer to Section 5709.07, Revised Code, the only statutory reference in the syllabus is to Section 5709.12, Revised Code.

In view of our conclusions, it is unnecessary to consider whether Section 5709.12, Revised Code, would also warrant the exemptions claimed in the instant case.

The decision of the Board of Tax Appeals, being both unreasonable and unlawful, is reversed, and the cause is remanded with directions to allow the tax exemptions sought.

*Decision reversed.*

SMITH, MATTHIAS, O'NEILL, SCHNEIDER and BROWN, JJ., concur.

HERBERT, J., dissents.

SMITH, J., of the Six Appellate District, sitting for ZIMMERMAN, J.