THE OHIO NORTHERN UNIVERSITY, APPELLANT, *v.* TAX COMMISSIONER OF OHIO ET AL., APPELLEES.

(No. 501—Decided February 4, 1970.)

*Messrs. Meredith, Meredith, Tait & Basinger,* for appellant.

*Mr. Paul W. Brown,* Attorney General, and *Mr. R. A. Malrick,* for appellee Board of Tax Appeals.

*Mr. Frederick E. Markley,* Prosecuting Attorney, for appellee Lloyd Miller, Auditor.

*Mr. Robert Wood, in propria persona.*

YOUNGER, J. This is an appeal from a finding of the Board of Tax Appeals of the Department of Taxation in which it made a decision concerning the taxability of a part of McIntosh Center located on the campus of Ohio Northern University at Ada, Ohio. The board exempted that portion of the first floor of McIntosh Center, the two rooms used for lounges and the entire second floor for the tax year 1968 and retained on the tax duplicate for the tax year 1968 the remainder of the first floor used for bowling,

billiards and food service which was found to be used with a view to profit under Section 5709.07, Revised Code.

McIntosh Center is the student union on this campus of 2,300 students. As such it has various lounges, conference rooms, a ballroom, meeting rooms, bowling and billiard rooms, student book store, a large student cafeteria, a snack bar and a formal restaurant known as The Wishing Well. It is the central meeting point for all student activities, faculty meetings and the many other activities which go on with ordinary campus and university affairs. Each student, as a part of his annual tuition, pays $5 for the use of the Center.

The University, as part of the activities it furnishes to the students, maintains a bowling alley and a billiard room in McIntosh Center and in addition it gives courses in bowling and billiards for which the students may obtain academic credit towards their degree. During the academic year ending August 31, 1968, the bowling and billiard rooms operated at a loss of $3,305. The Center has a mortgage of over $1,000,000, and the part of the interest and retirement assigned to these rooms was $14,672, making a total deficit of expenses over income of $17,977. This does not take into account any depreciation or student assessments. At the hearing on this case the Attorney General conceded that the bowling and billiard room should be exempted. The snack bar and the restaurant likewise operated at a loss of $3,956 and $1,187 respectively. However, the dining hall operated at an excess of income over expenses, figured on the same basis, of $145,503.

The record shows that the University contracts with the Slater Corporation by which Slater "agrees to prepare and sell meals to the University for University to resell to its students, faculty, guests and other authorized persons at the following rates": $337.50 per person per regular University year for 21 meals per week; $99 per person per regular University year for 9 meals per week and $284 per person for University year for 15 meals per week. In addition there are occasional meals at fixed prices for which the University receives 10 per cent of the amount charged. The record also shows that the University charg-

es each student a fee for board for each quarter, which, of course, is higher than that which it pays Slater. The University furnishes all equipment, and facilities for food service, including heat, fuel, refrigeration, utility service, including complete inventory of glassware, chinaware and silverware, and cleaning service for dining room walls, windows, light fixtures, draperies and blinds.

The main issue in this case is over the question of the feeding of the students, it being the decision of the Board of Tax Appeals that the method employed by the University is that of operating "with a view to profit." Of course, if the president of the University and the faculty bought the food, prepared and served it and washed the dishes at no extra remuneration there would probably be no issue raised. On the other hand the University could employ forty or fifty people to do this work for the 1,200 meals served three times a day, and each of them would be gainfully employed and required to file income tax returns. The University has chosen to deal with a caterer, who employs skilled workmen such as expert buyers, menu planners, and personnel directors, to relieve itself of this day-by-day headache. Whether this method is cheaper than hiring its own employees is debatable and is an economic issue.

The record shows that Ada is a small town with one small restaurant which remains closed on Thursday. The University is thus faced with a large sized problem of how to feed twelve hundred students, faculty members and guests three times a day.

This court is not required to decide the economic question of which method is the cheaper, which is the more efficient or which system will provide the better food.

The record shows that while the income is greater than the shown expenses in the operation of the cafeteria, the bookkeeping employed shows nothing for depreciation of the building or the many utensils used. The general operation of the Center, with the salaries and wages, janitorial services, heat, lights, supplies, repairs and many other expenses, shows a deficit of $142,333. The bookstore had an excess of $30,964, but the entire Center showed an excess of only $11,014. As stated before, other charges such

as depreciation, etc., could and should be charged against this excess.

In the operation of McIntosh Center the University is providing a necessary and proper university function. The bookstore, bowling and billiards, cafeteria, snack shop and restaurant are facilities which the student body, faculty, alumni and visitors to the University are entitled to and have a right to expect. The University itself has a lot of expense. The salaries of the administrative officers, faculty, maintenance men, janitors, watchmen and others must be paid. To meet this expense the University relies upon student fees, contributions from the Methodist Church and gifts from alumni and friends of the University. But while it may be that the cafeteria, snack bar and restaurant, looking at them purely from the amount of money taken in and the direct expense allocated to them, show some excess, we hold that the cafeteria, snack bar and restaurant are not "used with a view to profit" when the entire operation of the University is considered.

We think the entire exemption claimed here comes within the reasoning of the Supreme Court of Ohio as announced in the case of *Denison University* v. *Board of Tax Appeals,* 2 Ohio St. 2d 17.

Therefore the last portion of the decision of the Board of Tax Appeals of the Department of Taxation of Ohio, which reads: "Retain on the tax duplicate for the tax year 1968 the remainder of the first floor used for Bowling, Billiards and food service herein found to be used with a view to profit under Revised Code Section 5709.07," being unreasonable and unlawful, should be reversed and vacated and the entire building of McIntosh Center should be held to be exempt from taxation for the tax year 1968.

*Decision reversed.*

COLE, P. J., and GUERNSEY, J., concur.