ROUND LAKE CHRISTIAN ASSEMBLY, INC., APPELLANT, *v.* COMMISSIONER OF TAX EQUALIZATION, APPELLEE.

(No. CA-756 — Decided March 11, 1982.)

*Messrs. Lane, Alton & Horst, Mr. Jack R. Alton* and *Mr. Theodore M. Munsell,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. James C. Sauer,* for appellee.

HENDERSON, P.J. This is an appeal from the decision and order of the Board of Tax Appeals denying appellant's application for exemption from real estate taxation of a lodge building located on

real estate in Ashland County, Ohio owned by appellant.

Appellant raises the following assignments of error:

"I. The Board of Tax Appeals erred in failing to reverse the final determination of the Commissioner of Tax Equalization which denied appellant's application for exemption of the real property in question despite the fact that said property is entitled to exemption under Sections 5709.12 and 5709.121, R.C.

"II. The Board of Tax Appeals erred in failing to reverse the final determination of the Commissioner of Tax Equalization which denied appellant's application for exemption of the real property in question despite the fact that said property is entitled to exemption under Section 5709.07, R.C.

"III. The interpretation of Section 5709.07, R.C., rendered by the Board of Tax Appeals in its holding that appellant's property was not entitled to exemption under said statute, is a violation of appellant's right to freedom of religion under the First Amendment to the United States Constitution.

"IV. The Board of Tax Appeals' interpretation of Section 5709.07, R.C., as the same applies to appellant's property results in Section 5709.07, R.C., being in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution."

The record herein indicates that appellant is a nonprofit corporation formed for the purpose of propagating the Gospel of Jesus Christ as found in the New Testament. Appellant maintains and operates a youth camp where youth are taught the importance of charitable and religious service to their fellow men. The property in question is a large lodge building located upon a sixty-seven acre camping facility used in the instruction of young people and operated by appellant. It is a partial two-story structure at its center with an auditorium and a dining hall below. The building also contains two one-story wings which swing away from the center portion, which wing areas contain the building's dormitories. The lodge is used in connection with the religious youth camp and is used for religious and charitable teaching and is an integral part of the Round Lake operation. The lodge has room and board facilities for which a small charge is made but the charge is insufficient to cover the cost. All money, all credits and all property of appellant are devoted exclusively to its charitable purposes. The lodge itself is devoted to use for religious teaching to promote and provide a means for the systematic giving of funds and also to encourage youths to devote their lives to serve according to the Gospel of Jesus Christ as found in the New Testament. The dormitories provide the youths with temporary shelter during their stay at the camp which lasts in general for a one week period. The lodge does not provide a permanent residence for anyone. The auditorium in the lodge provides a facility for religious and charitable instruction and a place for religious worship.

Youth campers are encouraged while at the lodge to provide financial support for missionary work, including medical missions, educational institutions, children's homes, homes for the elderly, food for the needy and other related projects.

The evidence indicates that appellant itself is composed of one hundred twenty-two member churches which make donations for various charitable purposes, including financial support for missionary work. The youth camp and its lodge facilities are open to youths who are or are not associated with member churches. Through their instruction, the campers are encouraged to devote their lives to the service of the Lord and to man.

The fee for a camp session is shown to be $30. If a child cannot afford this cost, his or her congregation will pay such cost for the child. In the event that a congregation is not willing to pay the cost, ap-

pellant will absorb the cost of that particular child. The evidence further indicates that the charges to the children do not generate the funding necessary to fully operate the campsite of the appellant, thus, appellant must rely on independent contributions from the several congregations associated with appellant to provide the balance necessary to meet operating costs.

This case arose before the Commissioner of Tax Equalization by the filing of an application by appellant for tax exemption of the lodge property. The commissioner denied the application for tax exemption and the matter was appealed to the Board of Tax Appeals. After a hearing before the Board of Tax Appeals, an order was filed by such board denying appellant's application for exemption from taxation of the real estate and the Board of Tax Appeals affirmed the final determination of the Commissioner of Tax Equalization. This appeal was then filed from the decision and order of the Board of Tax Appeals. We proceed to discuss each separate assignment of error that has been raised by appellant.

## I

The first assignment of error is that the Board of Tax Appeals erred in failing to reverse the final determination of the Commissioner of Tax Equalization which denied appellant's application for exemption of the real property in question, despite the fact that said property is entitled to exemption under R.C. 5709.12 and 5709.121.

R.C. 5709.12, exemption of property used for charitable purposes, reads in its pertinent parts as follows:

"* * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation. * * *"

This statute was effective May 31, 1968 and in order to determine what the legislature meant by the term "used exclusively for charitable purposes" the legislature in October 1969 enacted R.C. 5709.121, "exclusive charitable or public use, defined," which reads, in pertinent part, as follows:

"Real property and tangible personal property belonging to a charitable or educational institution or to the state or a political subdivision, shall be considered as used exclusively for charitable or public purposes by such institution, the state, or political subdivision, if it is either:

"(A) Used by such institution, the state, or political subdivision, or by one or more other such institutions, the state, or political subdivisions under a lease, sublease, or other contractual arrangement:

"(1) As a community or area center in which presentations in music, dramatics, the arts, and related fields are made in order to foster public interest and education therein;

"(2) For other charitable, educational, or public purposes;

"(B) Otherwise made available under the direction or control of such institution, the state, or political subdivision for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit."

In the case of *White Cross Hosp. Assn.* v. *Bd. of Tax Appeals* (1974), 38 Ohio St. 2d 199 [67 O.O.2d 224], the court analyzed the method of determining whether property is tax exempt. The court stated that the analysis is twofold. First, it must be determined whether the property is owned by a "charitable organization or institution" as required by R.C. 5709.12. Second, if it is determined that the property is owned by a charitable institution, it must then be determined whether the property falls into either one of the uses or purposes set forth in R.C. 5709.121. The relevant portions of the concurring opinion of Justice Stern, at page 203, set forth this twofold analysis as follows:

"Initially, it is important to observe that although R.C. 5709.121 purports to

192

define the words used exclusively for 'charitable' or 'public' purposes, as those words are used in R.C. 5709.12, the definition is not all encompassing. R.C. 5709.12 states: '* * * Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation.' Thus, *any* institution, irrespective of its charitable or non-charitable character, may take advantage of a tax exemption if it is making exclusive charitable use of its property. See *Wehrle Foundation* v. *Evatt* (1943), 141 Ohio St. 467 [26 O.O. 29], 49 N.E. 2d 52. The legislative definition of exclusive charitable use found in R.C. 5709.121, however, applies only to property 'belonging to,' *i.e., owned by,* a charitable or educational institution, or the state or political subdivision. The net effect of this is that R.C. 5709.121 has no application to non-charitable institutions seeking tax exemption under R.C. 5709.12. Hence, the first inquiry must be directed to the nature of the institution applying for an exemption. Since it appears that the White Cross Hospital Association is a nonprofit charitable and educational institution, it is appropriate to examine the applicability of R.C. 5709.121."

From an examination of the case law which has developed over a long period of time in this state, we find that where a party failed to obtain tax exempt status for its property, it was generally because the Board of Tax Appeals had found that the party was not a charitable organization or institution within the meaning of R.C. 5709.12. This was true in *White Cross* v. *Bd. of Tax Appeals, supra,* and *Episcopal Parish* v. *Kinney* (1979), 58 Ohio St. 2d 199 [12 O.O.3d 197]. In the case *sub judice,* this question has already been affirmatively answered in favor of appellant by the Board of Tax Appeals. In its decision and order dated September 18, 1981, the Board of Tax Appeals stated as follows:

"Therefore under all the facts and circumstances presented, the Board does find that it is reasonable to conclude that appellant is a charitable organization as it is an instrument whose effect and purpose is to aid those in need without a view to profit."

We find, therefore, that the sole question before this court is whether the subject property conforms with the requirements which are set forth in R.C. 5709.121. The Board of Tax Appeals' decision that the property did not conform with the requirements set forth in R.C. 5709.121, we find to be in error.

Under R.C. 5709.121, real and tangible personal property is charitable in purpose, if either of the following occurrences takes place:

(1) The property is used by appellant for other charitable, educational or public purposes. (R.C. 5709.121[A][2].)

(2) The property is otherwise made available under the direction and control of appellant for use in furtherance of or incidental to its charitable, educational or public purposes and not with a view to profit. (R.C. 5709.121 [B].)

The Board of Tax Appeals concedes that the lodge in question is not used with a view to profit. The board also agrees that the lodge is used by appellant for charitable, educational and public purposes, including youth camping and religious education for children of member churches, needy children and children not otherwise affiliated with member churches. We find that the lodge is certainly in furtherance and incidental to the acknowledged charitable, educational and public purposes of appellant by providing the religious training which encourages young people to devote their lives to the Gospel of Jesus Christ, including spiritual and physical service to man. We find further from the evidence that the subject lodge serves as a place for the collection of charitable contributions for benevolent missions.

In effect, the Board of Tax Appeals denied tax exempt status to appellant on

the grounds that the property had not been used at all times solely for charitable or religious causes. R.C. 5709.121 does not require that the use of the property be solely for charitable purposes and at no other time used for any other purpose. We do not find the words "exclusively," "solely" or "completely" used for such purpose in R.C. 5709.121. In fact, in subdivision (B) of 5709.121, the property need only be made "available" by the charitable institution in or incidental to its charitable, educational or public purposes and not with the view to profit.

In *Galvin* v. *Masonic Toledo Trust* (1973), 34 Ohio St. 2d 157 [63 O.O.2d 242], we find the basis for the support of appellant's construction of R.C. 5709.121 as opposed to the Board of Tax Appeals' interpretation of said statute. This case stands for the proposition that it is not necessary that the property be used at all times for charitable events in order for property to be deemed as used "exclusively for charitable purposes." The question in *Masonic Toledo Trust, supra,* was whether an auditorium which was used for charitable community events, including presentations in music, dramatics, the arts and related fields, was sufficient to make it property which was "exclusively used for charitable purposes." The evidence in that case was that the facility had also been used a considerable portion of time for commercial purposes and for non-charitable uses. All of the funds that had been received for renting out the auditorium in that case were used for running the auditorium, and any excess revenue was to be used for the maintenance and improvement of the facility. The Supreme Court of Ohio noted that the test for exemption did not relate to the use of the property, but whether the use of the proceeds derived therefrom furthered, and were incidental to, the charitable purposes of the institution. The court stated in *Masonic Toledo Trust, supra,* in paragraph two of its syllabus:

"2. The provision, 'property belonging to a charitable institution * * * used exclusively for charitable purposes,' in R.C. 5709.12, is defined in R.C. 5709.121 to include property made available under the direction and control of such institution where the use is in furtherance of or incidental to the institution's charitable, educational or public purpose and not with a view to profit."

In *American Chemical Soc.* v. *Kinney* (1982), 69 Ohio St. 2d 167 [23 O.O.3d 197], the Supreme Court of Ohio provided further support for appellant's interpretation of R.C. 5709.12 and 5709.121. American Chemical Society was a nonprofit organization. Its charter provided that the purpose of the organization was educational in nature. In order to fulfill its stated objectives, American Chemical Society had a campus area consisting of approximately sixty acres of land, fifteen to twenty acres of which were used for office buildings and parking lots. The remainder of the land was primarily open space which had been professionally landscaped. The grounds included picnic benches, volleyball, softball courts and a walking path. The property abutted the Olentangy River in the city of Columbus, Ohio. American Chemical Society sought tax exemption for this property under R.C. 5709.12 and 5709.121 and was denied a tax exemption under the statute by the Board of Tax Appeals. The Supreme Court, in holding for American Chemical Society, adopted a three-prong test that it had previously set forth in *Cincinnati Nature Center* v. *Bd. of Tax Appeals* (1976), 48 Ohio St. 2d 122, 125 [2 O.O.3d 275]. This test is as follows:

"To fall within the terms of R.C. 5709.121, property must (1) be under the direction or control of a charitable institution or * * * political subdivision, (2) be otherwise made available 'for use in furtherance of or incidental to' the institution's 'charitable * * * or public purposes,' and (3) not be made available with a view to profit."

The Supreme Court found that

American Chemical Society was a charitable and public institution for R.C. 5709.121 purposes and stated that the first prong of the test had been satisfied. In applying this to the case at bar, we find that it has been admitted by the Board of Tax Appeals and by the Commissioner of Tax Equalization that the stated purposes of appellant are that of a charitable institution and appellant is, in fact, a charitable institution and we so find in this case.

In addition, the Supreme Court in *American Chemical Soc., supra,* determined that the property was not used with a view to profit and we so find in the case *sub judice, i.e.,* that appellant does not use this property with a view towards profit. Thus, the third prong of the test set forth by the Ohio Supreme Court has also been satisfied. This leaves as the sole issue the determination of whether or not the second prong of the test has been met. The Commissioner of Tax Equalization in *American Chemical Soc., supra,* contended that the land in question was used solely to create a pleasant environmental setting for the employees and in no way furthered the stated purpose of publishing chemical abstracts and indexes. The Supreme Court rejected the commissioner's contention, noting that the contention failed to take into account the integral part the entire Chemical Abstracts complex played in the operation's success. The Supreme Court stated in its syllabus:

"1. When property is being used in furtherance of or incidental to an institution's charter provisions, *i.e.,* charitable, educational or public purposes and not with a view to profit, it is exempt from taxation under R.C. 5709.121.

"2. When landscaped and beautified property surrounding a charitable institution is shown to be instrumental in the recruitment, retention and productivity of the institution's employees, and such employees play an integral role in the continued success of the institution, the prop-

erty is exempt from taxation and falls within the purview of R.C. 5709.121."

In *Little Miami, Inc.* v. *Kinney* (1981), 68 Ohio St. 2d 102 [22 O.O.3d 329], the Supreme Court of Ohio also interpreted a case of tax exempt status under R.C. 5709.12 and 5709.121. Little Miami, Inc. was a nonprofit Ohio corporation established for the purpose of preserving the nature and scenic appearance of the Little Miami River and its surroundings. The court in that case, in overruling the Board of Tax Appeals which relied on *Holy Trinity Protestant Episcopal Church* v. *Bowers* (1961), 172 Ohio St. 103 [15 O.O.2d 173], stated, at page 103:

"Appellant argues that this is not a case of 'mere ownership,' but that it uses Bass Island to further its charitable purpose. This charitable purpose is preservation. Appellant caused Bass Island to be restored to its natural state and is working towards its continued preservation. We find that this use is in furtherance of appellant's charitable purpose. Accordingly, the decision of the Board of Tax Appeals is reversed."

We note further that the Ohio Supreme Court has in the case of *Miami Valley School* v. *Kinney* (1982), 69 Ohio St. 2d 134 [23 O.O.3d 173], again overruled the Commissioner of Tax Equalization and held with regard to a headmaster's residence in a private school for grades kindergarten through twelve as follows:

"In *Denison University* v. *Bd. of Tax Appeals* (1965), 2 Ohio St. 2d 17 [31 O.O.2d 10], at paragraph two of the syllabus, we held: 'All buildings connected with such a public college or academy and used with reasonable certainty in furthering or carrying out the necessary objects and purposes of such academy or college, including the president's residence, * * * and not used with a view to profit are exempted from taxation by Section 5709.07, Revised Code. * * *'

"Under the facts presented herein,

we find that our holding in *Denison, supra,* applies to allow the exemption."

For all of the reasons set forth hereinabove, we sustain appellant's first assignment of error and find that appellant is entitled to have its real property in question exempted from real estate taxation under R.C. 5709.12.

## II

The second assignment of error is that the Board of Tax Appeals erred in failing to reverse the final determination of the Commissioner of Tax Equalization which denied appellant's application for exemption of the real property in question despite the fact that said property is entitled to exemption under R.C. 5709.07.

R.C. 5709.07 in pertinent part provides as follows:

"Public schoolhouses and houses used exclusively for public worship, the books and furniture therein, and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof, and not leased or otherwise used with a view to profit, public colleges and academies and all buildings connected therewith, and all lands connected with public institutions of learning, not used with a view to profit, shall be exempt from taxation. * * *"

The Board of Tax Appeals in this case has strictly construed R.C. 5709.07 by finding public worship as encompassing formal church services only. The case of *Watterson* v. *Halliday* (1907), 77 Ohio St. 150, is cited by the Board of Tax Appeals in support of its conclusion that the statute does encompass only formal church purposes. However, this case dealt with residences of priests and whether or not they could claim tax exempt status under the statute. In *Watterson, supra,* the residences of the priests were not open to the public, nor were they a place of public worship. This is completely different from the use of the lodge in the case *sub judice.* We are not dealing with

the question of "a residence." In the case at bar, there is no residence or public living quarters in the lodge. The dormitories are only used to house the youths for their weekly stays in order that the youths may make proper use of the facilities presented by the lodge. The lodge is located in a wilderness setting and it is necessary to have temporary sleeping quarters in order that proper use can be made of the facilities. R.C. 5709.07 clearly provides that buildings annexed to or connected with a place of public worship along with grounds surrounding the facilities are tax exempt.

The Board of Tax Appeals takes exception with the fact that religious instruction is received at the lodge. Citing the case of *Society of the Precious Blood* v. *Bd. of Tax Appeals* (1948), 149 Ohio St. 62 [36 O.O. 403], the Board of Tax Appeals argues that a place where religious instruction is received disqualifies that property for tax exempt status. We have difficulty following the rationale of the Board of Tax Appeals. In a traditional church service, the minister, priest or pastor instructs a congregation by quoting from the scriptures and explaining the same, and gives a sermon. These are but two examples of the continuing religious instruction which takes place within a conventional church and church service. No one certainly can argue that these buildings are not places of "public worship" within the meaning of R.C. 5709.07. In *Precious Blood, supra,* the building was occupied for residential purposes by a priest in charge and seven students all of whom were ordained priests who had finished college and seminary courses, but who did not have the practical experience to qualify them for pastorates or missionary work. In effect, it was a vocational training school, not open to public worship. These facts are not comparable with the facts in the case *sub judice.* The lodge and campsite are not used as training facilities for priests, pastors or ministers and we

distinguish *Precious Blood, supra,* on this ground.

The strict construction that the Board of Tax Appeals advocates would eliminate exemptions for many and various rooms located in a conventional church such as an auditorium or basement facility, including kitchens attached thereto. Many times such auditoriums and basement facilities are not used for "public worship" within the strict meaning of that phrase, yet they do promote fellowship among individuals which is an integral part of the Christian doctrine. The statute makes no requirement that a church or congregation be allowed only one place for "public worship" and yet the Board of Tax Appeals seems to indicate that property used exclusively for religious retreats does not fall within the legislative intent. We do not agree with the determination of the Board of Tax Appeals. Worship can be conducted at any place, including property used exclusively for religious retreats.

We therefore find that the campsite of Round Lake Christian Assembly, Inc., the lodge which is an integral part of all of it and the grounds annexed thereto, are clearly places of "public worship" entitled to tax exempt status under R.C. 5709.07.

For the reasons set forth hereinabove, we hereby sustain appellant's second assignment of error.

### III and IV

Since we have sustained the first two assignments of error, it is not necessary for this court to determine the third and fourth assignments of error involving the constitutionality of the interpretation of the Board of Tax Appeals of R.C. 5709.07 and the violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

For all of the reasons set forth hereinabove and particularly in view of the most recent cases of *American Chemical Soc.* v. *Kinney, supra, Little Miami, Inc.* v. *Kinney, supra,* and *Miami Valley School* v. *Kinney, supra,* we find that appellant is in effect entitled to tax exemption for its property located at Round Lake, both under R.C. 5709.07 and 5709.12.

For such reasons, we hereby sustain appellant's first two assignments of error, and for purposes of this opinion we overrule appellant's third and fourth assignments of error and we find that the decision of the Board of Tax Appeals is unreasonable and unlawful and it is therefore reversed and final judgment is granted to appellant.

*Decision reversed.*

MILLIGAN and MCKEE, JJ., concur.