OPINION
Plaintiff-Appellant Grandview Hospital Medical Center (aka Dayton Osteopathic Hospital) applied for tax exempt status for several parcels of land, including two that are used for housing of residents, interns and medical students. After the Tax Commissioner denied tax exempt status for those two parcels of land, Grandview filed an appeal to the Board of Tax Appeals ("BTA"). Following a hearing, the BTA upheld the Tax Commissioner's finding denying the tax exempt status. Grandview has timely appealed that decision raising the following assignments of error:
 "I. The Board of Tax Appeals erred by failing to conclude that Appellant's Witness, James Porter, was not [sic] competent to testify as to the charitable and public purpose of the Hospital.
 "II. The Board of Tax Appeals erred by not finding that Appellant uses the subject property exclusively for charitable purposes."
 I
In the first assignment of error, Grandview challenges the BTA's finding that James Porter was not competent to testify as to the charitable and public purpose of the hospital. Contrary to what is implied from this assignment, the BTA did not prevent any of Mr. Porter's testimony from entering the record. In fact, when objections were made to his testimony during the hearing, the examiner either overruled them or simply asked for more foundation. No objections to testimony were sustained. Instead, the BTA made a finding in its decision that Porter was not competent to provide evidence that the residences were used in furtherance of Grandview's charitable purpose. Because this assignment of error basically challenges an aspect of the BTA decision, we will address it within the second assignment of error generally challenging that decision.
 II
Grandview argues in its second assignment of error that the BTA erred in denying the exemption for the two parcels. When reviewing a BTA decision, this court may only reverse "when it affirmatively appears from the record that such decision is unreasonable or unlawful." Witt Co. v.Hamilton Cty. Bd. of Revision (1991), 61 Ohio St.3d 155, 157. Further, we may not disturb findings of the BTA that are supported by sufficient probative evidence. Id.
R.C. 5709.12(B) provides in part: "Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation * * *." This statute must be read in conjunction with R.C. 5709.121, which states:
 "Real property and tangible personal property belonging to a charitable or educational institution or to the state or a political subdivision, shall be considered as used exclusively for charitable or public purposes by such institution, the state, or political subdivision, if it meets one of the following requirements:
"* * *
 "(B) It is made available under the direction or control of such institution, the state, or political subdivision for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit."
Incorporating both of these statutes, the supreme court established the following test for a charitable exemption: "property must (1) be under the direction or control of a charitable institution or state or political subdivision, (2) be otherwise made available `for use in furtherance of or incidental to' the institution's `charitable * * * or public purposes,' and (3) not be made available with a view to a profit."Warman v. Tracy (1995), 72 Ohio St.3d 217, 219, citing Cincinnati NatureCtr. Assn. v. Bd. of Tax Appeals (1976), 48 Ohio St.2d 122, 125. The Tax Commissioner found, and it has not been disputed, that Grandview is a charitable institution pursuant to Cleveland Osteopathic Hospital v.Zangerle (1950), 153 Ohio St. 222 (holding a hospital is considered charitable if it provides "service and assistance [to] the sick, injured and ailing, with open doors and benevolent concern for the afflicted souls who lack the ability to pay for the attentions they receive"). Therefore, the first element of this test has been satisfied.
Before specifically addressing the second and third elements of the test, we should consider the cases advanced by both parties to support their relative positions. After reviewing all of these cases, we find that different courts have interpreted the statutes to allow and deny the exemption in very similar circumstances. We agree with Grandview, however, that cases decided prior to 1969, the year R.C. 5709.121 was enacted, are not authoritative. Prior to the enactment of R.C. 5709.121, R.C. 5709.12 required that the property be used exclusively for charitable purposes in order for the exemption to apply. Conversely, R.C. 5709.121 defined "exclusive use" for charitable institutions as use "in furtherance of or incidental to" the charitable purpose. SeeCincinnati Nature Ctr., 48 Ohio St.2d at 124 (finding the board's decision to be unreasonable and unlawful because it relied on cases decided prior to the adoption of R.C. 5709.121).
The Tax Commissioner relies on Jewish Hosp. Assn. v. Bd. of TaxAppeals (1966), 5 Ohio St.2d 179, 180 for the general proposition that residential property should not be granted a charitable exemption. However, that case was decided prior to the 1969 enactment of R.C. 5709.121
and therefore does not apply the appropriate definition of exclusive use. This same reasoning applies to Philada Home Fund v. Bd. of TaxAppeals (1966), 5 Ohio St.2d 135.
In addition, the Tax Commissioner cites several more recent cases where reviewing courts have affirmed the BTA's denial of the exemption. SeeSummit United Methodist Church v. Kinney (1982), 2 Ohio St.3d 72, 73;Episcopal Parish v. Kinney (1979), 58 Ohio St.2d 199, 201; Mt. CalvaryEvangelical Lutheran Church v. Kinney (1984), 19 Ohio App.3d 267, 268. In each of those cases, the reviewing court upheld the BTA's refusal to grant the exemption because none of the appellants qualified as a charitable institution under the statute. The courts did not even reach the question of whether the property involved was used in furtherance of the institution's charitable purpose. In the present case, the parties have agreed that Grandview is a charitable institution. Accordingly, none of the above cases are pertinent to our inquiry.
Next, the Tax Commissioner argues that Warman, 72 Ohio St.3d 217,Wellsville v. Kinney (1981), 66 Ohio St.2d 136, and Cincinnati Nature,48 Ohio St.2d 122, which all allowed the charitable exemption, are distinguishable from the present case. Warman involved a residence which housed nuns working for Mercy Memorial Hospital. The hospital's articles of incorporation required the hospital to employ, care for and provide housing for nuns assigned to the hospital by the Sisters of Mercy.Warman, 72 Ohio St.3d at 219. As part of their duties, the nuns were on-call twenty-four hours a day, every day of the year. In addition, they were not charged rent. The Warman court found that the use of the property as a residence for the nuns furthered the charitable mission of the hospital, and accordingly granted the exemption. Id. at 219.
In Cincinnati Nature Ctr., the exemption was also requested for property used for employee residences. Cincinnati Nature Ctr.,48 Ohio St.2d at 122. The employees were required to reside in the houses as part of their employment and were on-call twenty-four hours a day to protect the property. Id. at 123. Also, they were not charged rent. The court held that the Nature Center was a public or charitable institution under the statute, which triggered the definition of "exclusive use" found in R.C. 5709.121. However, the BTA had failed to apply this definition, instead finding that the residences were not used "exclusively" for charitable purpose and thus denying the exemption. The court of appeals reversed the BTA decision, applying the correct definition and finding that "`the use of the two houses by employees of the Nature Center was in furtherance of and incidental to its charitable purpose, and was not with a view to profit,' because they were not rented or used `for private business or professional activity.'" Id. at 126. The supreme court agreed and affirmed the court of appeals. Id.
The facts in Wellsville are very similar to those in CincinnatiNature. Wellsville also involved housing located on publicly-owned property which was used as an employee residence. Wellsville,66 Ohio St.2d at 136. Although Wellsville concerned R.C. 5709.08 which provides exemptions for public as opposed to charitable institutions, the same definition for "exclusive use" found in R.C. 5709.121 applied. InWellsville, the caretaker for a city-owned cemetery was required as part of his employment to live in a house on the cemetery property. The BTA found that it was necessary for the caretaker to live on the property to care for and protect the public grounds. Id. at 138. The supreme court affirmed the exemption, finding the BTA decision to be reasonable and lawful. Id.
The Tax Commissioner argues that the three cases discussed above are distinguishable from the present case. In each of those cases, the employees were required to live in the premises as part of their employment. Furthermore, none of the employees were required to pay rent to live in the residences. In our case, the doctors and medical students were required to be on the Grandview campus while on-call at the hospital, but were not required to live in the houses in question. Also, contrary to those cases, the tenants of the properties in this case were required to pay a nominal rent of $250 per month. Although we acknowledge these factual distinctions, we do not believe the distinctions eliminate their consideration. In fact, the similarities are likely more notable than the distinctions. In each case, including the present, a charitable or public institution sought an exemption for property used as a residence for some of its employees. The employees in each case were required to be on-call much of the time which also obligated them to stay on their employers' grounds. We do not believe the distinctions pointed out by the Tax Commissioner outweigh the similarities.
Moreover, some other cases raised by Grandview possess facts even more attenuated than those found in the present case and the exemption was still granted. Bd. of Edn. of South-Western City Schools v. Kinney
(1986), 24 Ohio St.3d 184 also involved a residence located on public property which was rented for $80 per month. The city rented the property in order to have someone present most evenings to deter trespass or damage to the property. Id. at 187. Even though the renter was not an employee, the court found that the purpose of renting the property was clearly incidental to the public purpose of the golf course and not with a view to profit. Id.
Additionally, in Round Lake Christian Assembly, Inc. v. Commr. of TaxEqualization (1982), 4 Ohio App.3d 189, the court reversed the BTA decision denying an exemption for a lodge building owned by appellant. The building was used for religious teaching and worship, and as dormitories for youths during their brief stay at the camp. A small fee was charged to those individuals staying in the lodge to help defray the cost of maintenance. Id. at 190-91. The BTA found that appellant was a charitable institution and did not operate the lodge with a view to profit, but that the lodge was not used exclusively for a charitable purpose. Id. at 192. Accordingly, it denied the exemption. In its review, the Fifth District found that the BTA failed to apply the proper definition of exclusive use found in R.C. 5709.121. The appellant was only required to prove that the use of the lodge was in furtherance of or incidental to the charitable purpose of Round Lake, not that it was exclusively used for that purpose. The court found that Round Lake had met this burden and therefore determined that the BTA's decision denying the exemption was unreasonable and unlawful. Id. at 193.
After a thorough review of the case law cited by the Tax Commissioner, we conclude that generally, when the institution has been found to be charitable, the exemption has been granted. See Id. at 192. Moreover, we have not discovered any cases that clearly indicate Grandview should not be entitled to the exemption. That being said, we must address the evidence adduced below and determine whether it was reasonably sufficient to support the BTA's finding.
Under R.C. 5709.12 and 5709.121, Grandview was required to prove in the second element that the property was used "in furtherance of or incidental to" the charitable purpose of the hospital. In addressing this element, the BTA made the following findings:
 "Grandview attempted to meet its burden by presenting the testimony of Mr. James Porter, Grandview's Director of Facilities Management for eight years. Mr. Porter's testimony was presented to provide evidence that Grandview used the residences in furtherance of the hospital's charitable purpose. However, we agree with the Tax Commissioner that the witness is not competent to provide evidence on this issue.
"* * *
 "In this matter, the record does not establish how the witness obtained, or if he has obtained, knowledge or understanding of the medical operations of the hospital, and how the housing interacts with the medical treatment of the patients, i.e., the charitable and public purpose of this institution.
 "As head of the physical facilities, Mr. Porter maintains the physician residences. However, nothing in his testimony suggests that he would have personal knowledge of the aspects of the operation of the hospital dealing with medical functions. He has not provided any testimony which would persuade us that he would have knowledge of the necessity of having medical personnel on site. Therefore, based upon the testimony and the evidence in the record, we are unable to conclude that the residences are used primarily for charitable purposes (R.C. 5709.12(B)), or that they are used in furtherance of the hospital's charitable function (R.C. 5709.121)."
It appears from the above-quoted portion of its decision that the BTA discredited the testimony elicited regarding the relationship between the properties and the charitable purpose of the hospital. Grandview argues that the BTA erred in discounting this testimony. We agree.
As Director of Facilities Management, Porter interacted on a daily basis with the tenants of these properties. He was aware of their schedules and their role at the hospital and in the clinic. Furthermore, the hospital administration had advised him that hospital policy required residents and interns to be on hospital grounds while they were on-call. Porter was required to know this information because it was his responsibility to provide these individuals with housing, either in the hospital or in these residences, while on-call.
The BTA decision suggests that this information did not provide the necessary nexus between use of the properties and the charitable purpose of the hospital. The Tax Commissioner found in his decision that Grandview is a charitable hospital because it provides treatment to indigent patients regardless of their ability to pay. It follows that the charitable purpose of Grandview is to care for indigent patients. Porter testified that the residents of the property work within the clinic program at the hospital that services indigent and low-income patients either without charge or on a sliding scale.
Undoubtedly, the residents of these properties contribute to the charitable purpose of the hospital by caring for the indigent patients. The only remaining nexus not specifically explained at the hearing was how the requirement for these individuals to remain on campus while on-call relates to the charitable purpose of the hospital. We find that this nexus is evident. It takes only common sense to comprehend why doctors should be on hospital grounds while they are on-call. Often when on-call doctors are needed at the hospital, they are needed because of a medical emergency. It is imperative that the doctors be close enough to the hospital that they can arrive within minutes. The BTA's refusal to recognize this as common knowledge was too stringent. Accordingly, we believe that the testimony elicited from Mr. Porter at the hearing was sufficient to establish that the use of the residences to house on-call doctors is in furtherance of or incidental to the hospital's charitable purpose of caring for indigent patients.
Grandview was required to prove in the final element that the residences were not used with a view to profit. When asked at the hearing whether the tenants were charged rent, Porter referred to it as a "nominal fee." He explained that the hospital offered a $250 housing allowance to the interns and residents, and this amount was simply booked into the account for the two properties for the tenants that lived there. Consequently, the tenants did not actually pay anything. Regardless, $250 rent is such a small amount that we consider it beyond dispute it was not charged in order to yield a profit. Therefore, the third element has been satisfied.
Based on the foregoing, we find that Grandview has satisfied all three elements set forth by the supreme court to qualify for the charitable use exemption under R.C. 5709.12 and 5709.121. As a result, we find that the BTA's decision denying the exemption was unreasonable and unlawful.
Judgment reversed and remanded for findings consistent with this opinion.
GRADY, J., and YOUNG, J., concur.